# B.

BAACK, (MANUFACTURERS' NAT. BANK v.) See Case No. 9,052.

BABBAGE, (STRATTON v.) See Case No. 13,527.

---

## Case No. 692.

### BABBELL et al. v. GARDNER.

### The CATHARINE.

[Bee, 87.] [1]

District Court, D. South Carolina, 1796.

SEAMEN—WAGES—FORFEITURE—GOING ON SHORE —DISCHARGE.

1. A British seaman does not forfeit his wages, under Act 2 Geo. II., merely by coming on shore to demand legally payment of his wages; but this must be done within forty eight hours after he leaves his ship.

2. Words which might imply a discharge of the chief mate do not amount to a discharge when spoken by the captain in anger and when the captain on the following day orders the mate to go on board to his duty.

[In admiralty. Libel by George Babbell against Job Gardner and the brig Catharine for wages. Dismissed.]

BEE, District Judge. This is a suit for wages as chief mate of the brig Catharine. The vessel is British property, the articles were signed in London, and, therefore, the contract must be considered altogether according to the lex loci of the country where it was made. The argument has been full, and the evidence long, and, in some points, contradictory; but upon mature consideration, the two following points seem alone to call for my decision.

1st. Whether there has been such a breach of his contract on the part of the actor as amounts to a forfeiture of his wages.

2d. Whether he is entitled at this time to demand them.

It appears that the actor did his duty on board this vessel for upwards of eleven months; and no complaint is produced, prior to the dispute which occasioned this suit. The words made use of by the captain, in the heat of passion, might, if there had been no subsequent explanation, have implied a discharge; but the conduct of the captain next morning was fully sufficient to do away with that impression: for he desired the mate, coolly, to go on board and do his duty; and upon hearing something about being discharged, asked who had discharged him. But was this retraction on the captain's part so far binding on the mate as to make the latter guilty of desertion? That he considered himself as discharged is certain. That upon his own statement of the circumstances, counsel concurred with him, is also clear.

Let us then look into the act of 2 Geo. II., to which the articles expressly refer. The 3d clause says that desertion, or obstinate refusal to proceed on the voyage shall incur the forfeiture of wages. No such obstinacy has been pretended here. The act further declares that entering on board a ship of war shall not amount to desertion; and that no mariner shall, by signing articles, be deprived of the means of recovering wages due before that act passed.

In their construction of this clause, the courts of admiralty in this country, prior to the revolution, considered no seaman as a deserter because he entered on board of a ship of war, or because he applied to a court of justice for his wages, within forty eight hours after leaving his ship. Numberless instances of this sort may be found among the records of this court; and 1 remember the remarkable Case of Pitkin and Gardon, [unreported,] where this point was fully discussed. Indeed, if the letter of the articles be alone referred to, "that no man, under any pretence whatever should go ashore without leave of his captain," redress must, in most cases, be withheld from the injured seaman; for, having once had recourse to the law, he would hardly venture back to his ship, till his suit should be determined.

1 am of opinion that the actor having applied for legal satisfaction within forty-eight hours after he left the vessel, cannot be considered a deserter, nor chargeable with a breach of articles. But I am also satisfied that the hasty language of the captain does not amount to a discharge, if coupled with subsequent circumstances. The articles must be complied with, and the voyage therein described must be performed. Till then the mate cannot demand his wages. Let the summons be dismissed.